TRUCK DRIVERS AND HELPERS LOCAL UNION NO. 728, William Gary Blackmon, Lewis T. Lombardy, Individually and on behalf of all persons similarly situated,

v.

CITY OF ATLANTA, Maynard H. Jackson, James Bond, John H. Calhoun, Panke Bradley, George Cotsakis, Morris Finley, Buddy Fowlkes, E. Gregory Griggs, Richard Guthman, Jr., Charles Helms, Ira Jackson, Arthur Langford, Jr., Esther Lefever, Carl Ware and Q. V. Williamson.

Civ. A. No. C77–998A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 23, 1979.

Fredrick C. McLam, Atlanta, Ga., for plaintiffs.

Ferrin Y. Mathews, City Atty., Thomas Bowman, Asst. City Atty., Atlanta, Ga., for defendants.

## ORDER

NEWELL EDENFIELD, District Judge.

This civil rights action, 42 U.S.C. § 1983, was tried to the court without a jury on February 8 and 9, 1979, and the parties were thereafter allowed to submit post-trial briefs. Those briefs have now been received, and the case is thus ready for ruling. The following order shall serve as the court's findings of fact and conclusions of law under Rule 52(a), Fed.R.Civ.P.

Plaintiffs' complaint is grounded on an asserted violation of the equal protection clause of the fourteenth amendment. The bone of contention is an Atlanta ordinance which provides for deduction of union dues from city employees' salaries, upon certain conditions. Atlanta Code of Ordinances, § 7-1033(c). The parties have stipulated that, at all relevant times, the defendants have granted union recognition and dues checkoff to employee labor organizations in a number of city departments and bureaus, including the Bureau of Fire Services. Stipulation of Facts and Other Matters, Plaintiffs' Exhibit 1, ¶ 8. Employees of the Bureau of Police Services, however, have not been allowed these privileges, and while the City will meet and discuss labor matters with the firemen's union and the municipal employees' union which apparently represents individuals in the bulk of the City's bureaus, it will not talk with plaintiff Truck Drivers and Helpers Local Union No. 728. This refusal has occurred, despite notification to Atlanta's mayor on January 28, 1977 that a majority of the employees of the Bureau of Police Services had designated Local 728 as their representative, which notification was an attempt to obtain the privileges provided to others by the dues checkoff ordinance. Plaintiffs have taken the position in this litigation that defendants' refusal to

> grant recognition and dues checkoff in favor of Plaintiffs and the employees of the Bureau of Police Services, while at the same time granting said right to employees in all other bureaus and departments of this City, is discriminatory, arbitrary, and without rational basis, infringing the fundamental right of Plaintiffs to equal protection of the law under the Constitution of the United States, Amendment Fourteen.

Complaint, ¶ XXVI.

1. In addition to briefing the merits, defendants have moved for an involuntary dismissal of the complaint. They assert that the plaintiff union has no cognizable interest in this litigation and further failed to demonstrate at trial that it has a cause of action. In addition, plaintiff Lombardy did not appear at trial and is no longer an employee of the Bureau of Police Services, so that dismissal is thought to be appropriate. Although the remaining individual plaintiff, Gary Blackmon, did testify and is still a city policeman, defendants characterize his testimony as a "harangue" of his grievances against the Bureau and assert that he failed to relate his problems to dues checkoff. Defendants thus argue that Blackmon failed to show that he has been injured by the operation of their ordinance and as a result lacks standing to sue.[1]

■ The controversy indeed appears to be moot with respect to Lombardy, but the court sees no merit to any of defendants' other contentions. Any assertion that

---

1. Defendants also point out that plaintiffs have taken no action at any time in this case with respect to their class allegations. No motion for certification has ever been filed, and the subject was not raised at trial. Under the circumstances, the court cannot conclude that plaintiffs would be adequate class representatives and therefore DISMISSES the allegations. As an alternate ground, the court notes that there has been no compliance with Local Rule 221.13 with respect to filing for certification. *See Walton v. Eaton Corp.*, 563 F.2d 66, 74–75 & n. 11 (3d Cir. 1977); *Strozier v. General Motors Corp.*, 13 F.E.P. 963 (N.D.Ga.1976).

This dismissal appears to have no effect on the result in this case, however, inasmuch as no damages are awarded and the court's injunction has the same effect as if a class were involved.

plaintiff Blackmon, who is a member of Local 728 and is employed by the Bureau of Police Services, lacks standing to challenge the operation of the ordinance against him borders on the frivolous. As for the union, the court finds the language of *Memphis American Federation of Teachers v. Board of Education*, 534 F.2d 699, 702 (6th Cir. 1976), to be pertinent here: "Since a union can act only through its members, actions by state or local officials which allegedly deny the constitutional rights of its members impede equally the rights of the union." [2] At least so long as the alleged rights of the employee are bound up with his status as a union member, as is true in the instant case, the court declines to hold that the union lacks standing.

Defendants also contend that no duty has been shown to run between plaintiffs and themselves, so that the case should be dismissed on this ground as well. The individual defendants assert that, since they no longer comprise a majority of the city council, they do not have the power to grant the relief which plaintiffs request. Furthermore, they point out that no concrete evidence of damages was put forward at trial. As for the City of Atlanta itself, defendants state that the ordinance under attack is not triggered until union signature cards have been submitted to their Commissioner of Finance for a determination that more than fifty percent of the members of a particular bureau are members of the union. Only after this determination has been made can checkoffs be authorized. Defendants assert that there is no evidence that any signature cards were submitted to the Commissioner in this case so that no duty to deduct was established. Furthermore, the requisite number of cards have not been authenticated before this court. Absent the cards, defendants see no duty on the part of the City to do anything for plaintiffs.

The cards are largely irrelevant to plaintiffs' case in its present posture. The City's policy throughout has been adamantly against recognition and dues checkoff for employees of the Bureau of Police Services. To refuse to hear plaintiffs' complaint for lack of a tender of union cards would be to require that a futile act have been done before filing of this lawsuit. The issue in this case is not whether the proper number of cards exist for recognition and dues checkoff; it is instead whether the employees of the Bureau of Police Services are entitled to an opportunity to employ the provisions of the ordinance which are available to employees of other city bureaus. The authenticity of union cards is initially a matter for the City to decide should this court rule against it. The only question for decision here at this time is whether plaintiffs can be excluded from the process altogether, as is the case under the present system.

The court therefore concludes that the City of Atlanta is a proper defendant, as there is no doubt that it is enforcing a policy against plaintiffs of the sort made actionable against cities under section 1983 by *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See* Order of September 26, 1978, at 2. The court agrees with defendants, however, that there was no proof of damage at trial, and therefore finds their motion meritorious to this extent. Given these two conclusions, there seems to be little point in reaching the rest of defendants' dismissal arguments. The court does note that their argument that the individual defendants cannot provide plaintiffs with the relief which they request falls far wide of the mark, as they are all subject to an injunction from this court that they refrain from violation of plaintiffs' rights. Their power or lack of power to take affirmative action is thus not the point on which dismissal turns.

For these reasons, defendants' motion for involuntary dismissal is GRANTED as to plaintiff Lombardy and as to damage claims and DENIED in all other respects.

---

2. It is clear that, aside from the standing question, a union is a "person" within the meaning of 42 U.S.C. § 1983. *Allee v. Medrano*, 416 U.S. 802, 819, n. 13, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974).

2. The standard by which the complained-of ordinance must be judged is set forth in this court's order of November 11, 1977, at 2–3 (citations omitted):

> Plaintiffs do not contend that police officers as a group form a suspect class for purposes of equal protection analysis . . . ; nor is a question of fundamental rights involved. . . . Rather, "the city's practice must meet only a relatively relaxed standard of reasonableness in order to survive constitutional scrutiny." . . . The ordinance is entitled to a presumption of validity, . . . and will be sustained "if any state of facts reasonably may be conceived to justify it."

As discussed at that time, defendants initially attempted to justify the line which they have drawn between police employees and other city employees on the ground of a threat presented by a police union to both public safety and to property within the city. The City thus refused to take any steps to encourage such a union, such as dues checkoff. This justification appeared to be equally applicable to the firemen of Atlanta, however, so that the court declined to dismiss the complaint. The case as a result became one in which the defendants were charged with articulation of a distinction between these two groups which would justify different treatment with respect to dues checkoff.

█ The issue before the court in this case is thus wafer thin. The question is not whether the City of Atlanta shall recognize a union in its police and fire departments. Under the decisions of the Supreme Court of the United States it is clear that the City could refuse to recognize a union in either department, assuming uniform treatment of both. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (state could properly treat uniformed service differently than other employees); *see also Beauboeuf v. Delgado College*, 428 F.2d 470 (5th Cir. 1970). The fact is, however, that the existence of a union or unions in both departments is an admitted and undisputed fact. The precise relief sought by the plaintiffs is that the City, in accordance with the above ordinance, be required to withhold for the union the dues of its members who are policemen; but the real issue is even considerably narrower than this. The final question is whether, having unions within both fire and police departments, and having already agreed to withhold union dues for the firemen who are union members, the City may now, under the equal protection clause, refuse to apply the same rules to its police. As noted, a simple public safety and property argument alone cannot carry the day for defendants. The City now seeks to justify its disparate treatment of the two departments with respect to withholding dues based on differences in the functions which the two departments perform, claiming that the police in a unique way and through individual discretionary decisions protect life and personal security while the fire department only operates on a team basis to protect property and, on occasion, life. However, considering the number of people who are injured and killed in fires, and the individual action often called for in that context, the validity of this distinction might be difficult to prove. Neither party has cited any authority, and the court has found none, where a classification recognizing the distinction put forward by defendants has been upheld, and in both law and logic it is difficult to understand how such distinction can exist, even assuming it has any relevance to the issue of dues checkoffs.[3] In fact, the basis for such a distinction is so

---

**3.** At trial, defendants also put forward several distinctions in structure between the police and fire departments, none of which had any bearing on the issue at bar. Indeed, it was readily apparent from defendants' witnesses that they saw no real distinction between police and firemen for present purposes; they instead thought that unions should not exist, much less be recognized, in either department. Both decisions such as *Johnson v. City of Albany*, 413 F.Supp. 782, 797 (M.D.Ga.1976), with respect to all public employees, and statutes such as Ga.Code Ann. §§ 54–1301, *et seq.*, with respect to firemen, stand as a bar to this end of preventing union membership, as distinguished from recognition, however.

**624**

difficult the court can find none;[4] and the court therefore rules for the plaintiffs: That so long as the City of Atlanta has unions within both its police and fire departments, and so long as it is willing to withhold union dues from the firemen, it must, under the equal protection clause, make the same option open to police employees. That is what equal protection means.

Defendants are therefore ENJOINED from withholding access to the privileges of Ordinance § 7–1033(c) from plaintiffs.

IT IS SO ORDERED.

---

4. Although decisions such as this are rare, *see International Assn. of Firefighters v. City of* *Sylacauga*, 436 F.Supp. 482, 489 (N.D.Ala. 1977).